## CHICAGO, R. I. & P. RY. CO. v. PRUITT.

No. 7460—Opinion Filed July 10, 1917.

Rehearing Denied Jan. 29, 1918.

(170 Pac. 1143.)

(Syllabus.)

1. Evidence—Expert Testimony — Admissibility.

The opinion of an expert witness is admissible in evidence whenever the subject-matter of inquiry is such that the jury are unlikely to prove capable of forming a correct judgment upon it without such assistance; the value of such evidence, however, is for the jury to determine.

2. Master and Servant—Negligence—Question for Jury.

Where the facts are such that reasonable men may fairly differ on the question as to whether or not the defendant, in a personal injury action, was guilty of primary negligence, the question is one for the jury.

3. Appeal and Error—Question of Fact—Verdict.

Where the evidence in the case reasonably tends to support the verdict of the jury, and the trial court has entered judgment thereon, such judgment will not be reversed on the ground of the insufficiency of the evidence.

4. Appeal and Error—Misleading Instruction—Reversal.

"The giving of an instruction which states a correct proposition of law, but which has no application to the issues involved, or the proof, will not warrant a reversal of the judgment, unless it is apparent that such instruction misled the jury."

5. Appeal and Error—Record—Exclusion of Evidence—Assignments of Error.

"In order that this court may consider assignments of error relating to the exclusion of evidence, there must be a showing in the record as to what the excluded evidence would have been, before the court can say that there was reversible error in the ruling."

Error from District Court. Pottawatomie County; Charles B. Wilson, Jr., Judge.

Action by W. H. Pruitt against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. On rehearing, judgment affirmed.

C. O. Blake, R. J. Roberts, W. H. Moore, and Abernathy & Howell, for plaintiff in error.

W. N. Maben and W. S. Pendleton, for defendant in error.

RAINEY, J. The parties to this action will be designated as in the trial court. W. H. Pruitt, as plaintiff, instituted this action in the district court of Pottawatomie county, Okla., against the Chicago, Rock Island & Pacific Railway Company, for damages for personal injuries alleged to have been sustained by him while in the employ of the defendant company. The plaintiff's petition charged, in substance, that while in the employ of the defendant company, in the capacity of truckman helper, he was injured by reason of a shaker bar slipping from a grate on one of the defendant company's engines, causing him to fall, and that the slipping of the shaker bar and his fall, resulting in the injury, were proximately caused by the negligence of his fellow servant, one Ed Horde, in failing to properly place the shaker bar upon the grate staff. After generally denying the plaintiff's allegations of negligence, defendant's answer charged contributory negligence, to which the plaintiff filed a general denial. The trial was had to a jury, which resulted in a verdict for the plaintiff for $1,600. From this judgment the defendant has appealed to this court.

The facts necessary to a determination of the questions involved in the appeal, as disclosed by the evidence, are substantially as follows:

The witness Ed Horde, called by the plaintiff, testified that at the time of the injury to plaintiff, that he (Horde) was engaged by the defendant company in what is known as shaking the grates or knocking the fires; that when an engine is brought into the yards of the company it was his duty, with an assistant, to knock the fires and clean the fire boxes, which is done by shaking the grates and dumping the fire into the pit; that the witness and the plaintiff were shaking the grates on the occasion of plaintiff's injury; that the grates weighed between 75 and 100 pounds each, and are attached to three staffs in front, which staffs extend up and about six inches above the deck of the engine; that the shaker bar is an iron bar about three or four feet long, with a hole in the end extending about four to six inches up into the bar, and in order to shake the grates the shaker bar is placed down over the staff, which fits into the hole in the shaker bar; that when the shaker bar is in good condition and the staff is in good condition and the shaker bar is properly placed upon the staff, it cannot slip off by just the ordinary pulling; that when the plaintiff got on the engine he asked the witness if everything was ready, to which the witness answered, "Yes," and that when "we both took hold of the shaker bar, as there was no use in one man trying to shake the bars, and we gave a surge on it, and the bar slipped off the staff, and we both fell." The witness further testified that he attempted to put the shaker bar on the staff; that "it was setting on there, it was supposed to be on there."

The plaintiff testified that just before the accident he was scraping cinders out of the ash pan, and Mr. Horde was up in the cab, as plaintiff understood, getting the shaker bar ready; that witness then got up into the cab, and that just as he got into the cab Horde said, "I am ready." Plaintiff then testified, "I walked up, and he had hold of it, and I took hold of it and gave a surge on it and it came off, and I think it was the inside one," and that when the shaker bar came off plaintiff fell to the deck of the engine on the coal, and was injured.

The principal error assigned is that the evidence was insufficient to support the verdict of the jury, and in support of this assignment it is strenuously insisted by counsel for defendant that there was no competent evidence of primary negligence on the part of the defendant company, but we will discuss the assignments of error in their logical order.

One of the questions asked the witness Horde was:

"When the shaker bar is in good condition and the staff is in good condition and the staff is properly placed—I mean the shaker bar is properly placed upon the staff, is there any danger of it slipping off by just the ordinary pulling?"

The witness answered:

"No; if it were properly put on it would not slip off."

An objection was made to this question, on the ground that it called for a conclusion of the witness, and it is here insisted that the court, by permitting the question to be answered, permitted the witness to usurp the province of the jury "instead of submitting it to them upon the facts and permitting them to determine from those facts whether or not there was any danger of the shaker bar slipping off if properly placed upon the staff." We do not think the court erred in overruling the objection to this question and answer, for it appears from the testimony in the record that this witness was an experienced man in shaking grates or knocking fires, having had three years' experience in this particular kind of work, and we believe that he was sufficiently qualified as an expert to give his opinion as to whether or not the shaker bar would come off in shaking the grates if properly placed on the staff.

As stated by Jones on Evidence, § 367, p. 459, where the subject under investigation is unfamiliar to the jury, or even to the judge, there would be no adequate mode of arriving at any satisfactory conclusion if expert testimony were rejected; and in recognition of this fact the courts have adopted the rule of admitting opinions of witnesses whenever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance.

It seems to us that the facts upon which the opinion of the witness Horde was based were of such a character as to make it improbable that such facts could be transmitted to the minds of the jury in such a way as to enable them to come to an intelligent conclusion without the aid of the witness' experience in the operation of the instrumentalities used in shaking the grates. While it was proper for the witness to give his opinion, the jury was not concluded

thereby, as the value of such evidence was for the jury to determine. Atchison, T. & S. F. Ry. Co. v. Baker, 37 Okla. 48, 130 Pac. 577; Fire Ass'n of Philadelphia v. Farmers' Gin Co., 39 Okla. 162, 134 Pac. 443.

But counsel also say that there was no competent evidence in the record showing that the bar would come off of the staff when operated properly. It will be observed that on this point witness Horde testified:

"We both took hold of the shaker bar, as there was no use in one man trying to shake the bars, and we gave a surge on it, and the bars slipped off the staff, and we both fell"

—and the plaintiff testified:

"I walked up and he had hold of it, and I took hold of it and gave a surge on it and it came off, and I think it was the inside one."

We do not know just what the witnesses meant, or just what the jury understood they meant by the use of the word "surge," and if this were all the testimony in the record we would be inclined to agree with counsel for defendant, but in the light of the other evidence in the case we cannot say that there was not any competent evidence that the shaker bar was improperly and negligently placed on the staff, or that the evidence clearly discloses that the plaintiff violently jerked the shaker bar. We do not believe that the witness intended to convey to the jury the idea that they violently jerked the shaker bar. That counsel for defendant must have thought that the witnesses had reference to a pull is indicated by the following question and answer propounded to and returned by the witness Horde:

"Q. When it slipped there was that the first pull that you made at it? A. The first pull."

In connection with this testimony, it must be borne in mind that the grates were very heavy, and that it was useless for one man to try to shake the bars. If one man could not shake the bars at all, certainly it required a strong pull for two men to shake them sufficiently, and when we bear in mind, in addition to the grates being very heavy, the fact that the witnesses were very thoroughly examined as to all the circumstances surrounding plaintiff's injury, we are of the opinion that the jury's verdict is reasonably supported by the evidence.

It is well settled in this jurisdiction that on the question of primary negligence of the defendants in personal injury actions, where the facts are such that reasonable men may fairly differ on the questions as to whether or not there was negligence, the question is one for the jury. Missouri, K. & & T. Ry. Co. v. Shepherd, 20 Okla. 626, 95 Pac. 243; Harris v. Missouri, K. & T. Ry. Co., 24 Okla. 341, 103 Pac. 758, 24 I R. A. (N. S.) 858.

Since there was evidence reasonably tending to support the verdict of the jury and the judgment of the trial court, the judgment will not be reversed on the ground of the insufficiency of the evidence. Frazier Brick Co. v. Herber, 62 Okla. 96, 162 Pac. 205; First Nat. Bank of Checotah v. Lewis, 61 Okla. 247, 161 Pac. 175; Berryhill v. Thrailkill, 61 Okla. 235, 160 Pac. 874; Oklahoma Farmers' Mutual Indemnity Ass'n v. Smith, 25 Okla. 495, 106 Pac. 861.

Complaint is made of the following instruction to the jury:

"One who employs others to labor is in law termed the master, and the one employed is called the servant. When the master is engaged in the operation of a railroad, it is its duty to guard its servants against probable injury so far as it can do so by the exercise of ordinary care and caution in the employment of careful, cautious and competent fellow servants to assist in such master's work; and, if a servant is injured while engaged in performing his duties to such master, by some act of one of his fellow servants who is also employed by such master of which such fellow servant would not have been guilty had he been at the time in the exercise of such a degree of care for the safety of his injured co-servant as an ordinarily careful and prudent man would have exercised under like or similar circumstances, the master will be liable to the injured servant in damages proximately flowing from such negligent act of the fellow servant."

Counsel admit that the instruction is correct as an abstract proposition of law, but contend that there was no issue which justified the court in this case in telling the jury that it was the duty of the railroad company to "guard its servants against probable injuries so far as it can do so by the exercise of ordinary care and caution in the employment of careful, cautious, and competent fellow servants to assist in such master's work." We do not think the instruction was prejudicial, for it was not contended by the plaintiff that the master had not used reasonable care in the employment of plaintiff's fellow servant, Horde, and there is no complaint made by plaintiff in his petition, or in the evidence, that the master had been negligent in this particular. It has frequently been held by this court that the giving of an instruction which

states a correct proposition of law, but which has no application to the issues involved, or the proof, will not warrant a reversal of the judgment, unless it is apparent that such instruction misled the jury. Pearson v. Yoder et al., 39 Okla. 105, 134 Pac. 421, 48 L. R. A. (N. S.) 334, Ann. Cas. 1916A, 62.

We have examined and considered all of the instructions, from which it appears that the court clearly informed the jury that, before they would be authorized to return a verdict for the plaintiff, they must find that his fellow servant, Horde, was negligent in placing the shaker bar on the staff, and that such negligence was the proximate cause of plaintiff's injuries. The instructions, as a whole, fairly and clearly state the law of the case. First Nat. Bank of Tishomingo v. Ingle, 37 Okla. 276, 132 Pac. 895.

The court sustained an objection to a question asked the witness G. S. Baxter, and this is assigned as error; but, as there is nothing in the record showing what the answer of the witness would have been, the alleged error in sustaining the objection cannot be reviewed by this court. Jones v. Citizens' State Bank, 39 Okla. 393, 135 Pac. 373; Gault v. Thurmond, 39 Okla. 673, 136 Pac. 742; Farris v. Hodges et al., 59 Okla. 87, 158 Pac. 909.

The defendant offered to prove by the witnesses Hardcastle and Martin that it was not the custom of the defendant company not to re-employ men who had been injured three times. This was offered in rebuttal of plaintiff's testimony to the effect that he had heard that such was the custom of the company. This testimony would not have disproved the plaintiff's statement, and was not on any material issue in the case, and we do not think the court erred in rejecting the same.

The judgment of the trial court is affirmed.

All the Justices concur.